UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────X
UNITED STATES OF AMERICA,

    -against-                                      04 CR 935 (SJF)

NELSON GUEVARA-UMANA,              **OPINION & ORDER**

                Defendant.
───────────────────────────────X

FEUERSTEIN, J.

I.    Introduction

On October 26, 2004, a grand jury returned the indictment charging the defendant with re-entering the United States without the consent of the Attorney General after having been previously deported from the United States due to a conviction for committing an aggregated felony in violation of Title 8, United States Code, Section 1326. Defendant Nelson Guevara-Umana (defendant) now moves to dismiss Count One of the indictment on the ground that the delay in his indictment violated the Speedy Trial Act and the due process clause of the Fifth Amendment. For the reasons stated herein, defendant's motion is denied.

II.    Background

On October 26, 1993, the defendant, a citizen of El Salvador, was convicted in Nassau County, New York of attempted rape, an aggravated felony. On September 29, 1999, as a result of this conviction, the defendant was deported from the United States to El Salvador, pursuant to Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a). On February 21, 2004, the defendant was arrested for attempted grand larceny in Long Beach, New York and committed to the Nassau County Correctional Center ("NCCC") pending trial. Also on

1

February 21, 2004, the Immigration and Naturalization Service ("INS") filed an immigration detainer indicating that an "[i]nvestigation has been initiated to determine whether this person is subject to removal from the United States." (Government's Response to the Defendant's Motion to Dismiss the Indicment, dated Mar. 17, 2006 ["Gov't Opp."], Ex. A). The detainer was based on a final order of removal which had been entered on September 2, 1999. On March 4, 2004, INS officials filed a "Record of Deportable Alien/Inadmissible Alien" which read, in part:

> SUBJECT is currently incarcerated at the Nassau County Correctional Center, East Meadow, NY. SUBJECT was previously deported as an Agg Felon. Subject is a reinstatement of the previous order of [removal].

(Id., Ex. B). On March 5, 2004, the defendant was served with a "Notice of Intent/Decision to Reinstate Prior Order [of removal]" which stated that "[i]n accordance with section 241(a)(5) of the Immigration and Nationality Act . . . you are hereby notified that the Attorney General intends to reinstate the order of removal entered against you." (Id., Ex. C). On the form, the defendant indicated that he "wish[ed] to make a statement contesting th[e] determination." (Id.). On May 6, 2004, the defendant pled guilty to Attempted Grand Larceny, in violation of Sections 110/155.30(8) of the New York State Penal Law. The defendant remained incarcerated at the NCCC pending sentence.

On May 10, 2004, the INS confirmed, by means of a fingerprint comparison, that the defendant was the same person who was convicted of rape in 1993, deported in 1999 and arrested on February 21, 2004. On May 21, 2004, an INS Special Agent wrote a "Memorandum For File" (Gov't Opp., Ex. D), which read, in part:

> Subject: GUEVERA-Umana, Nelson

> Investigation has been conducted with the following result:
> (X) Complaint for violation of 8 USC 1326 authorized by the U.S. Attorney Cynthia Monaco, EDNY.

On June 3, 2004, the defendant was sentenced to time served for his Attempted Grand Larceny conviction. The defendant remained incarcerated, however, pursuant to the INS detainer which had been lodged on February 21, 2004.

On September 24, 2004, the Department of Homeland Security issued a "Certificate of Nonexistence of Record" (Gov't Opp., Ex. E), which documented that no record existed of the defendant having applied for or having been granted permission by the Attorney General to re-enter the United States following his 1999 deportation. On September 30, 2004, he was arraigned on the complaint before Magistrate Judge Michael Orenstein. On October 26, 2004, a grand jury returned the indictment charging the defendant with unlawfully re-entering the United States after the commission of an aggravated felony in violation of Title 8, United States Code, Section 1326.

Defendant moves to dismiss Count One on the grounds that the length of his detention from the time he was taken into INS custody (June 3) until the date of his indictment (October 26) violated both the Speedy Trial Act (STA) and due process.

III.  The Speedy Trial Act

    A.  Standard

The STA requires that, "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b).

If the government fails to comply with this time limit, the STA requires the dismissal of charges in the complaint with or without prejudice. 18 U.S.C. § 3162(a)(1). The STA only applies to an indictment issued in connection with the "offense" for which the defendant was "arrested." 18 U.S.C. § 3161(b). The Act defines "offense" as a criminal offense. 18 U.S.C. § 3172(2).

The Second Circuit has not addressed whether a civil detention triggers the STA's thirty day time limit, but the other Courts of Appeals that have considered the issue have held that civil detention, including INS civil detention, does not trigger the STA's thirty day time limit. United States v. Dyer, 325 F.3d 464, 468 (3rd Cir. 2003); United States v. Garcia-Martinez, 254 F.3d 16, 19 (1st Cir. 2001); United States v. Noel, 231 F.3d 833, 836 (11th Cir. 2000); United States v. De La Pena-Juarez, 214 F.3d 594, 598 (5th Cir. 2000); United States v. Grajales-Montoya, 117 F.3d 356, 366 (8th Cir. 1997); United States v. Cepeda-Luna, 989 F.2d 353, 355-56 (9th Cir. 1993); United States v. Chapman, 954 F.2d 1352, 1358 n. 8 (7th Cir. 1992); United States v. Blackmon, 874 F.2d 378, 381-82 (6th Cir. 1989).

In this case, the defendant was formally arrested on September 30, 2004 and indicted on October 26, 2004. Some circuits have held, however, that INS detentions may trigger the STA time clock in "cases of collusion between Immigration and Naturalization officials and criminal authorities, where the civil detention is merely a ruse to avoid the requirements of the Speedy Trial Act." Cepeda-Luna, 989 F.2d at 354. See also United States v. Drummond, 240 F.3d 1333, 1336 (11th Cir. 2001); De La Pena-Juarez, 214 F.3d at 598. According to the Fifth Circuit, in order qualify for the "ruse" exception, the defendant must "demonstrate[] that the primary or exclusive purpose of the civil detention was to hold him for future criminal prosecution." De La Pena-Juarez, 214 F.3d at 598. See also United States v. Restrepo, 59 F. Supp. 2d 133, 137-38

(D. Mass. 1999) ("[W]hile a civil detention by the INS alone does not necessarily trigger the Speedy Trial Act, where that period of detention is used primarily or exclusively to develop criminal charges involving the conduct on which the civil arrest was based, the time limit established by the Speedy Trial Act begins running on the date of the civil arrest.").

    B.    Discussion

In this case, the time between the start of the defendant's civil detention and his indictment was 145 days, or approximately five months. (See Gov't Opp., Exs. B, C). However, this fact alone does not establish collusion between the INS and the United States Attorney's Office. In order qualify for the "ruse" exception, the defendant must show collusion or that the civil detention is a mere ruse to detain the defendant for future criminal prosecution. De La Pena-Juarez, 214 F.3d at 598. See also Garcia-Martinez, 254 F.3d at 20; Cepeda-Luna, 989 F.2d at 357; Drummond, 240 F.3d at 1336, Grajales-Montoya, 117 F.3d at 366. According to the government, there is no evidence either of collusion between the INS and criminal authorities, or that the sole purpose for the defendant's INS detention was to hold him for criminal prosecution. (See Gov't Opp. at 6). Defendant concedes as much in his papers. (Defendant's Motion, dated Feb. 17, 2006, at 5 ("It is not clear if the government used the time prior to Mr. Guevara-Umana's arraignment on the complaint . . . to prepare the criminal case against him.")). "The fact that federal criminal authorities might have known about [a person's] detention . . . does not necessarily support a conclusion that they colluded with the INS to detain [that person]." De La Pena-Juarez, 214 F.3d at 600. See also Dyer, 325 F.3d at 469 (even if federal officials are aware of and slightly involved in the deportation proceedings, that is not enough to establish the requisite collusion); Garcia-Martinez, 254 F.3d at 19-20 (no evidence of collusion even though

INS officials contacted the United States Attorney's Office to refer a case for criminal prosecution more than thirty days prior to the issuing of the indictment). According to the Supreme Court, once a removal order is issued, six-months is a presumptively reasonable period of time for an alien to stay in INS custody prior to being deported. United States v. Zadvydas, 533 U.S. 678, 701 (2001).

Further, "[a]lthough similarity between the civil and criminal charges may in some circumstances suggest collusion, it is not, by itself, sufficient to satisfy defendant's burden to demonstrate that the 'primary or exclusive purpose of the civil detention was to hold him for future criminal prosecution.'" United States v. Pinto-Roman, 337 F. Supp. 2d 781, 787 (E.D. Va. 2004) (quoting De La Pena-Juarez, 214 F.3d at 598). Defendant must still produce some evidence of collusion "even when the administrative and criminal charges are identical." Id.

In cases where the indictment was dismissed, the court specifically found evidence of collusion. See United States v. Bravo, Crim. Action No. 03-637, 2004 U.S. Dist. LEXIS 12236, at *6-7 (E.D. Pa. June 21, 2004) (time limit triggered by civil detention because defendant was targeted from time of arrest and agent made a notation on defendant's immigration paperwork indicating that the defendant was "awaiting trial" in order to "delay deportation of Defendant until an indictment had been obtained"); United States v. Vasquez-Escobar, 30 F. Supp. 2d 1364, 1367 (M.D. Fla. 1998) (government admitted that it was not holding the defendant to effectuate his deportation under § 241(a)(5) but to provide the government the time and evidence necessary to establish defendant's guilt).

Finally, neither the "Record of Deportable Alien/Inadmissible Alien" (Gov't Opp., Ex. B) nor the "Notice of Intent/Decision to Reinstate Prior Order" (Id., Ex. C) make any reference to

criminal prosecution. See Restrepo, 59 F. Supp. 2d at 135-36 (Record of Deportable/Inadmissible Alien included a handwritten notation that the defendant was "amenable to prosecution for 8 U.S.C. § 1326").

In sum, the defendant fails to present any evidence or even make a claim of collusion between immigration officials and criminal authorities. Further, the INS did not finally confirm defendant's status as an illegal re-entrant until September 2004 and there is no evidence that defendant's civil detention was solely or primarily for purposes of criminal prosecution. As such, the time from the beginning of his civil detention until his indictment did not violate the Speedy Trial Act.

IV. Due Process

The due process clause of the Fifth Amendment provides that "No person shall . . . be deprived of life, liberty or property without due process of law." The defendant has a liberty interest in remaining free from detention. Foucha v. Louisiana, 504 U.S. 71, 80 (1992). The due process clause requires that persons may not be punished "without providing the safeguards which must attend a criminal prosecution." Kennedy v. Mendoza-Martinez, 372 U.S. 144, 184 (1963). Congress did not intend for INS detention to serve as punishment. Noel, 231 F.3d at 837. In this case, there is no evidence that the defendant's detention served any purpose other than to permit an investigation in order to effectuate his deportation. Indeed, based upon defendant's intent to contest his deportation (Gov't Opp., Ex. C), it was incumbent upon the government to secure the Certificate of Non-Existence of Record prior to deportation and arrest.

V. Conclusion

For the reasons stated above, defendant's motion is denied.

SO ORDERED.

SANDRA J. FEUERSTEIN
United States District Judge

Dated: October 27, 2006

Copies to:

Federal Defenders of New York, Inc.
Long Island Federal Courthouse
460 Federal Plaza
Central Islip, NY
11722-4422

United States Attorney's Office
One Pierrepont Plaza, 14th Floor
Brooklyn, New York, 11201